UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LIVE CRYO, LLC,

        Plaintiff,

                             CASE NO. 17-CV-11888
        v.                       HON. GEORGE CARAM STEEH

CryoUSA IMPORT AND
SALES, LLC ET AL.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS (Doc. 2)**

This lawsuit arises out of the parties' agreement whereby defendants

provided cryotherapy chambers to plaintiff Live Cryo, LLC. ("Live Cryo") for

use at its Michigan locations.  Cryotherapy chambers, which use liquid

nitrogen to maintain a temperature of about 240 degrees below zero, are

used by clients for alleged health benefits.  One of the defendants herein,

defendant CryoUSA Import and Sales LLC, filed a related lawsuit in Texas

state court three days before plaintiff Live Cryo filed this federal lawsuit.  As

a result, defendants argue that this court should abstain under the

*Colorado River* doctrine.  Alternatively, defendants seek dismissal of all

claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim.  After defendants filed their motion for abstention or dismissal, plaintiff filed a First Amended Complaint without leave of court.  As such, plaintiff alleges defendants' motion is now moot.

In their reply brief, defendants assert that the time period for filing an amended complaint without leave of court had expired.  Nevertheless, they agree to have the court consider the First Amended Complaint in deciding their motion to dismiss, and urge the court to consider their motion this way rather than elevating form over substance and delaying resolution of the issues pending here for a second round of briefing.  Because plaintiff had an adequate opportunity to respond to defendants' arguments, and filed its First Amended Complaint and Response brief in response to defendants' motion to dismiss, the court finds it appropriate to adjudicate the present dispute on the merits.  For the reasons set forth below, the court shall grant defendants' motion to dismiss for failure to state a claim with respect to the tort and quasi-contract claims, and shall deny the motion as to the breach of contract and breach of warranty claims.  Oral argument was heard on August 29, 2017 and informs the court's decision here.

## I.    Background

Because the court is addressing a motion to dismiss, the factual allegations set forth below are those set forth in the First Amended

Complaint.  Plaintiff Live Cryo, LLC is a Michigan corporation.  Defendants CryoUSA Import and Sales ("Cryo Import"), CryoUSA Franchising, LLC, CryoUSA Holding, LLC, and CryoUSA Mobile, LLC are Texas corporations. Defendants Eric Rauscher and Mark Murdock are the owners of defendant corporations.  Plaintiff alleges that the parties entered into a franchise agreement.  Defendants, on the other hand, deny this and assert that the two share a distribution agreement, as the parties' agreement is entitled.

Whole body cryotherapy exposes the entire body to temperatures as cold as 240 degrees below zero for about three minutes.  The alleged benefits of cryotherapy are more restful sleep, improved mood, enhanced athletic performance, increased energy, a stronger immune system, and faster healing of injuries and muscle aches.  Defendants market themselves as experts in whole body cryotherapy businesses.  Plaintiff alleges that it entered into a franchise agreement with the defendants following its attendance at a seminar meeting in Texas in 2016.  The agreement is memorialized in writing in a document entitled, "Distribution Agreement," and which was executed on July 15, 2016.

According to the First Amended Complaint, at the business meeting, they received a fifty-three page booklet which included a return on investment worksheet on one of the pages.  The investment worksheet

projected that plaintiff could earn as much as $30,350 per month, assuming fifty clients per day at a cost of $45.00 per session.  The workbook further represented that most locations average 10 clients a day within 90 days, that some locations reach the 25 per day mark fairly quickly, and that its Dallas location averages about 50 clients per day.  Plaintiff does not allege that the statements regarding the Dallas location and others were fraudulent, only that they were designed to induce reliance on plaintiff's part.

Plaintiff claims that there was no factual basis for the prediction that it could replicate the Dallas location's success, or that it could service as many as 25 clients per day.  Plaintiff also claims that representations about the effectiveness of the chambers were fraudulent, and that the chamber at its West Bloomfield location only operated properly for seven days since its January 16, 2017 opening.  Plaintiff hired an HVAC technician to examine the chamber, and he concluded that it never reached below negative 166 degrees Fahrenheit on any of the five tests he performed.

The Distribution Agreement provides that plaintiff may exclusively distribute cryotherapy chambers in Michigan for a twenty-four month period that may be renewed upon the payment of $10,000.  The Distribution Agreement further provides that plaintiff must purchase 15 chambers within

the first six months to maintain its exclusive dealership status. The Agreement provides that defendants control marketing and training, and all of its chambers bear its name and mark. In order to purchase a chamber, plaintiff executes a Purchase Agreement. The cost of a chamber is $50,000.

Defendants train and certify five individuals on chamber operations as part of the purchase price, charge $250.00 for each subsequent person trained, and require that only trained and certified individuals operate the chambers in order for the limited warranty to remain in effect.

The Distribution Agreement contains a choice-of-law provision and forum selection clause:

> 10.3 Venue/Governing Laws. This Agreement is governed by the laws of the State of Texas. Any legal action concerning this Agreement shall be brought in the state and federal courts in Dallas, Texas.

(Doc. 4-1 at PgID 160). The Purchase Agreement also contains a choice-of-law provision and forum selection clause. Specifically, Paragraph 12.4 of the Purchase Agreement provides:

> **12.4 Governing Law and Forum Selection**
>
> This Agreement shall be construed in accordance with the Law of Texas, without regard to its conflicts of laws provisions. The exclusive forum for any litigation arising from or relating to the Agreement and/or for resolving any related disputes shall be Dallas County, Texas state district

court (the "Dallas Courts.")  All parties irrevocably consent
to the exclusive jurisdiction of the Dallas Courts for such
purposes.

(Doc. 4-2 at PgID 172).

Plaintiff experienced numerous difficulties with the chambers.  On

April 26, 2017, plaintiff sent Rauscher and Murdock a letter, through

counsel, alleging that defendants had engaged in fraud, were in violation of

the Michigan Franchise Investment Law ("MFIL"), had breached the

Purchase Agreement, and had breached the warranty.  On May 2, 2017,

Cryo Import brought suit against plaintiff in the state district court of Dallas

County, Texas.  Before receiving notice of that lawsuit, plaintiff filed this

action in Wayne County Circuit Court on May 4, 2017, which defendants

timely removed here.

In the Texas lawsuit, Cryo Import alleges breach of contract arising

out of the parties' Distribution Agreement on the grounds that plaintiff did

not live up to its end of the bargain to purchase a sufficient quota of

cryotherapy machines, and breached the Purchase Agreements by failing

to comply with its obligations to submit timely warranty claims and repairs.

In their First Amended Complaint filed in federal court, plaintiff has pled

eleven claims: (I) violation of the MFIL, Mich. Comp. Laws § 445.1501 *et

seq.*, (II) violation of the MFIL, Mich. Comp. Laws § 445.1532, (III) fraud,

(IV) silent fraud, (V) innocent misrepresentation, (VI) tortious interference with business relationship with Orchard Fitness, (VII) tortious interference with business relationships with its customers, (VIII) breach of warranty, (IX) breach of contract, (X) promissory estoppel, and (XI) unjust enrichment.

## II. Standard of Law

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  "'[N]aked assertions' devoid of 'further factual enhancement'" are insufficient to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 570).  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  Even though the complaint need not

contain "detailed" factual allegations, its "'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

### III. Analysis

### A.    Choice of Law

Defendants argue that the Distribution Agreement's and Purchase Agreement's choice-of-law provisions calling for the application of Texas law, and forum selection clauses requiring litigation related to the Agreements to be filed in Texas, require dismissal of this action.  Plaintiff has not responded to the argument that Texas law would govern their claims under the choice-of-law provision in the Agreements.  An analysis of whether Texas or Michigan law controls is important to the court's determination of whether plaintiff's claims survive defendants' motion to dismiss.

Federal courts sitting in diversity apply the choice of law principles of the forum state.  *See Wallace Hardware Co. v. Abrams*, 223 F.3d 383, 391 (6th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).  Michigan's conflict of law rules follow the approach articulated in 1

Restatement (Second) of Conflict of Laws § 187, which provides that a contractual choice-of-law provision will govern unless the chosen state, here Texas, has no substantial relationship to the parties or the transaction, or Michigan has a materially greater interest and application of Texas law would be "contrary to a fundamental policy" of Michigan. *Banek Inc. v. Yogurt Ventures USA, Inc.*, 6 F.3d 357, 361 (6th Cir. 1993).

Here, Texas has sufficient ties to the Distribution Agreement as plaintiff's corporate representatives traveled to Texas to obtain information about cryotherapy and to analyze the business opportunity there, and defendants are Texas corporations who are located in Texas. Also, there has been no showing that a dominating public interest of Michigan would be contravened by permitting the contractual dispute to be resolved under the law of Texas. Accordingly, the parties' choice-of-law clause in the Agreements may be enforced with respect to the parties' contractual dispute, and Texas law governs the contractual claims. The court notes that neither side has suggested breach of contract claims are analyzed differently under Texas or Michigan law.

The question then becomes whether the choice-of-law provision in the parties' Agreements govern plaintiff's tort claims under MFIL, common law fraud, tortious interference with business relationships, promissory

estoppel, and unjust enrichment.  The choice-of-law provision in the Distribution Agreement provides: "This Agreement is governed by the laws of the State of Texas."   The Purchase Agreement provides that "[t]he Agreement shall be construed in accordance with the Law of Texas."   The Sixth Circuit has at least twice addressed similar issues in determining whether a choice-of-law provision is limited to contractual claims arising out of the agreement or whether it also applies to tort claims.

In *Moses v. Bus. Crd Express, Inc.*, 929 F.2d 1131, 1140 (6th Cir. 1991), the Sixth Circuit found that a choice-of-law provision applied to plaintiff's fraud and misrepresentation claims and was not limited to purely contractual claims.  In that case, the choice-of-law provision in the parties' agreement stated, "This Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan."  *Id.* at 1139.  In reaching its conclusion, the court distinguished the choice-of-law provision from one analyzed by the Fifth Circuit in *Caton v. Leach*, 896 F.2d 939 (5th Cir. 1990), which the Fifth Circuit construed narrowly, holding the provision only applied to contractual claims and did not apply to plaintiff's tort and *quantum meruit* claims where the clause provided that "**[t]his agreement** shall be construed under the laws of the State of California."  *Caton*, 896 F.2d at 942 (emphasis added).  The

choice-of-law provision in *Caton* mirrors the clause at issue here. Thus, under the Sixth Circuit's holding in *Moses*, the choice-of-law provision requiring the application of Texas law is limited to contract claims and does not cover plaintiff's tort and quasi-contract claims.

The Sixth Circuit addressed a similar issue in *Banek, supra*, and held that a choice-of-law provision in a franchise agreement was sufficiently broad to cover plaintiff's claims for fraud and misrepresentation. 6 F.3d at 363. In that case, the choice-of-law clause provided,"[t]his Agreement was made and entered into in the State [of] Georgia and all rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws of the State of Georgia." *Id.*at 359. The court also found that the fraud and misrepresentation claims were directly related to the franchise agreement, and thus, applied the choice-of-law clause to cover those tort claims as well. The choice-of-law provision in *Banek* was much broader in scope than the clause at issue here.

Other district courts faced with a narrowly defined choice-of-law provision like that present here, have decided that the provision does not apply to tort claims. *See Touch-n-Buy, Ltd. P'ship v. Girocheck Fin., Inc.*, No. 15-10863, 2016 WL 2957930, at *2 (E.D. Mich. May 23, 2016) (agreement's choice-of-law clause limited to purely contractual claims as

fraud claim involved representations made prior to entering into the contract and choice-of-law provision merely provides that Florida law "governs" the agreement); *AGA Gas, Inc. v. Wohlert Corp.*, No. 5:98-CV-155, 2000 WL 1478466, at *2 (W.D. Mich. July 21, 2000) (agreement's choice-of-law clause governed only contract claims, and the law of the forum applied to claims of fraud and misrepresentation). These cases, although not binding, are persuasive authority and support the conclusion here that the narrowly drafted choice-of-law provision does not apply to plaintiff's tort and quasi-contractual claims.

Based on the above analysis, the court determines that the choice-of-law provisions in the Distribution Agreement and Purchase Agreements are limited to contractual claims and thus, Texas law governs the breach of contract and warranty claims. However, the law of the forum, namely Michigan law, governs plaintiff's tort and quasi-contract claims. Having determined that Michigan law applies to the majority of plaintiff's claims, the court turns now to the question of whether the forum selection clauses require dismissal of this action.

## B. Forum Selection Clause

Defendants argue that the forum selection clause in the parties' Agreements require dismissal of this matter in total. Plaintiff responds that

such clauses are void under the MFIL which provides that such clauses are negated when set forth in a franchise agreement. Specifically, MCL § 445.1527(f) provides that if contained in a document relating to a franchise, "[a] provision requiring that arbitration or litigation be conducted outside this state" is void and unenforceable. Defendants contend that MFIL does not apply because plaintiff is not a franchisee and Texas law controls. For the reasons set forth below, the forum selection clause is void and unenforceable as an issue of fact exists as to whether the parties share a franchisor/franchisee relationship and Michigan's prohibition of such clauses in franchise agreements controls.

### 1.    Franchisor/Franchisee Relationship

Defendants seek dismissal of Counts I and II, which assert claims under the MFIL, arguing that plaintiff is not its franchisee, and that the parties share a distribution agreement, not a franchise agreement. Under MCL § 445.1502(3), a "franchise" is defined as "a contract or agreement, either express or implied, whether oral or written, between 2 or more persons to which all of the following apply:"

(a) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor;

(b) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate;

(c) The franchisee is required to pay, directly or indirectly, a franchise fee.

All three elements must be present in order for a relationship to be governed by the MFIL. *Bye v. Nationwide Mut. Ins. Co.*, 733 F. Supp. 2d 805, 827 (E.D. Mich. 2010).

According to the First Amended Complaint, all three factors are alleged as follows. First, Paragraph 3.1 of the Distribution Agreement gives defendants control over the marketing aspect of the business. Paragraph 3.1 provides:

Marketing. Distributor shall be allowed to further the promotion, marketing, sale and other distribution of the Products in the Territory and to keep CryoUSA informed of marketing developments.

(Doc. 4-1 at PgID 154). Second, all products sold by plaintiff contains the CryoUSA name and logo and CryoUSA specifically provides plaintiff with a license to use marks, including "Cryosense" and "CryoUSA E Tablet." It appears that plaintiff satisfactorily alleged the first two elements. The court turns now to the third factor which presents the closest question.

As to the third factor, plaintiff alleges three methods of indirect payment of a franchise fee: (1) defendants charge a "mark up" on the purchases of their chambers, (2) defendants require that training fees of $250 be paid in order for any warranty to be honored, and (3) plaintiff must pay $10,000 to renew the Distribution Agreement.  Defendants respond that plaintiff has failed to allege payment of a franchise fee within the strictures of *Iqbal* because (1) the chambers were sold at a bona fide wholesale price, (2) the training fee was part of the purchase fee of every chamber and additional training was optional and the amount of the fee was insufficient to amount to a hidden charge for the right to do business, and (3) the $10,000 renewal fee is not a hidden franchise fee because the only thing plaintiff loses upon non-renewal is the loss of exclusivity — the right to be the sole cryotherapy chamber distributor in the entire state of Michigan.

The MFIL defines "franchise fee" as "a fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including but not limited to payments for goods and services."   MCL. § 445.1503.  Although a franchise fee may include payments for goods or services, MFIL specifically exempts "[t]he purchase or agreement to purchase goods,

equipment, or fixtures directly or on consignment at a bona fide wholesale price."  MCL § 445.1503(1)(a).  Having set forth the statutory definition of franchise fee, the court considers now defendants' arguments that plaintiff has failed to adequately plead the existence of any such fee.

As to defendants' first argument, whether or not the chambers were sold at a bona fide wholesale price is an issue of fact that cannot be decided at the pleadings stage.  However, the court tends to agree with defendants that the training fee is probably insufficient to amount to a franchise fee.  *See Boeve v. Nationwide Mut. Ins. Co.*, No. 08-cv-12213, 2008 WL 3915011, at *5 (E.D. Mich. Aug. 20, 2008) (costs incurred during training only amount to a franchise fee where the costs are substantial and unrecoverable.)  It appears unlikely the $250 training fee at issue here would meet that standard.  The court turns now to the question of whether the $10,000 renewal fee amounts to an indirect franchise fee.

Defendants claim the $10,000 fee cannot be considered because MFIL does not apply to "the renewal or extension of an existing franchise where there is no interruption in the operation of the franchised business by the franchise."  MCL § 445.1503(3).  The court is not convinced that Section 445.1503(3) informs this court's decision about whether plaintiff pays an indirect franchise fee.  Section 445.1503(3) does not address

franchise fees at all, but defines the terms "offer" and "offer to sell."

Specifically, Section 445.1503(3) states:

> (3) "Offer" or "offer to sell" includes an attempt to offer to dispose of or solicitation of an offer to buy, a franchise or interest in a franchise for value. The terms defined in this act do not include the renewal or extension of an existing franchise where there is no interruption in the operation of the franchised business by the franchisee.

MCL § 445.1503(3).  The Michigan Court of Appeals has explained that the above exclusion of renewal or extensions of a franchise agreement from the definitions of the terms "offer" and "offer to sell," indicates the Legislature's intent to restrict liability under MFIL to conduct at the time of a sale.  *Franchise Mgmt. Unlimited, Inc. v. America's Favorite Chicken*, 221 Mich. App. 239, 251 (1997).  A careful review of the First Amended Complaint indicates that plaintiff bases its MFIL claims on alleged misrepresentations at the time of the sale.  Accordingly, at this pleadings stage, plaintiff has sufficiently pled that it paid an indirect franchise fee based on the alleged "mark up" of the cryotherapy chambers and the $10,000 renewal fee.  Also, the First Amended Complaint attaches a copy of CryoUSA's website page which advertises, "Own a Franchise."  (Doc. 403 at PgID 181).  In addition, one of the defendants is known as CryoUSA Franchising, LLC.  Based on the allegations of the First Amended

Complaint, a question of fact exists as to whether the parties bear the relationship of franchisor and franchisee.

## 2. Choice of Law

Having found that a question of fact exists as to whether the parties entered into a franchise agreement, the court turns now to the question of whether the forum selection clauses in the parties' Agreements are void. Defendants argue the provision voiding such clauses does not apply because Texas law governs. For the reasons discussed previously, Texas law does not govern plaintiff's MFIL claim. In addition, under Section 187 of the Restatement (Second) of Conflict of Laws, Michigan has a substantially greater interest than Texas in protecting the rights of its franchisees and preventing them from being haled into an inconvenient forum far from the place when they operated their franchise. As the Sixth Circuit noted in *Banek,* the Michigan legislature prohibited such clauses in franchise agreements because, "the Michigan legislature understood the burdens of being forced to arbitrate a claim in a foreign forum are significant." 6 F.3d at 360. Accordingly, the court will not enforce the forum selection clause set forth in the parties' Agreements and will allow plaintiff's claims to proceed on the merits here.

## C.  MFIL and Common Law Fraud Claims

Because the matter is properly before this court, the court now addresses defendants' argument that plaintiff's tort and quasi-contract claims should be dismissed for failure to state a claim.  For the reasons set forth below, plaintiff has failed to plead fraud with requisite particularity and the statements alleged to be fraudulent are not actionable because they are merely forward looking projections of future conduct, and the parties' integration clause makes any reliance on any alleged misrepresentations made prior to the Agreements unreasonable.

Count I alleges violation of Section 5 of MFIL which prohibits fraudulent conduct "in connection with the filing, offer, sale, or purchase of any franchise."  MCL § 445.1505 and Count II alleges derivative liability for a "person who directly controls a person liable under this act."  MCL § 445.1532.   Section 5 sounds in fraud:

> **445.1505. Filing, offer, sale, or purchase of franchise; prohibited conducts**
>
> Sec. 5. A person shall not, in connection with the filing, offer, sale, or purchase of any franchise, directly or indirectly:
>
> (a) Employ any device, scheme, or artifice to defraud.
>
> (b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the

statements made, in the light of the circumstances under which they are made, not misleading.

(c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

MCL § 445.1505. The MFIL expressly states that "fraud" and "deceit" are not limited to common law fraud or deceit, thus, dictating that the court should construe the terms more broadly. MCL § 445.1503(2).

Even construing Section 5 of MFIL broadly, plaintiff's MFIL claims must meet the heightened pleading standard of Rule 9(b). *See Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012). The analysis below applies to the MFIL claims as well as the common law claims for fraud, silent fraud, and innocent misrepresentation. The First Amended Complaint alleges that defendants misrepresented the quality of the cryotherapy chambers, which allegedly never reached a low enough temperature to be effective, and that through statements made in the workbook, at the seminar, and in negotiations leading up to the parties' agreement, defendants provided false earnings projections, return on investment numbers, and number of customers to be expected. Defendants claim the allegations are deficient because plaintiff engages in "group pleading" by treating all six defendants *en masse*, and that the

statements could not be said to be fraudulent as they were merely forward looking statements or "puffery."

## 1.  Group Pleading

In order to state a claim for fraud under Federal Rule of Civil Procedure 9(b), a plaintiff, at a minimum, must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)).  "Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8."  *Id.* at 503.  Even construing the requirements of Rule 9(b) liberally in conjunction with Rule 8, plaintiff's fraud claims are woefully deficient here.

Defendants argue that plaintiff has engaged in impermissible "group pleading" by alleging that all four corporate defendants, and the two individual defendants, are liable for fraud, without articulating with any particularity the identity of the speaker of the alleged fraudulent statements. Although the name of a specific employee need not always be alleged to meet the strictures of Rule 9(b), for example where only one corporation is a named defendant, *Bledsoe II*, 501 F.3d at 508, plaintiff has introduced no

authority to suggest that fraud claims are sufficiently particular when directed generally at four corporations and two individuals in the same breath. Numerous courts have found allegations of fraud to be deficient when the speaker is not identified individually, but the claims are directed at the defendants *en masse*. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012); *D.E. & J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003). Under these cases, plaintiff's fraud claims here are deficient as they fail to specify the defendants allegedly responsible for the allegedly fraudulent misrepresentations and which statements they made.

## 2. Future Promises

In addition, the fraud claims are deficient because they contain merely forward looking projections which are not actionable. Under the Michigan Supreme Court's seminal fraud case, the law is well settled that:

> An action for fraudulent misrepresentation must be predicted upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud.

*Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976). In *Hi-Way Motor*, the court found that defendant's verbal promise that plaintiff would have an exclusive heavy-duty truck dealership for the Alpena area so long as the plaintiff did a reasonably good job, was not actionable in fraud when defendant granted another party a dealership in the same area,

because the statement was a future promise.  *Id.* at 337-39.  Similarly, in *Van Tassel v. McDonald Corp.*, 159 Mich. App. 745, 752-53 (1987), the court found representations that a Baskin-Robbins store would be a "gold mine," that plaintiff had a bright future, that she would soon be driving a big car and living in a big home, and that she could make more money owning her own business than at Chrysler, were merely expressions of opinion or puffing and were not actionable in fraud.

The Sixth Circuit addressed similar promises in *Busch v. Dyno Nobel, Inc.*, 40 F. App'x 947, 964 (6th Cir. 2002) where it found that defendant's promise that it knew how to create a plant successfully, and its estimate of future costs did not amount to fraud because they were not known untruths at the time made, but amounted to promises of future capabilities, which are not actionable.

The same result should be reached here.  Plaintiff alleges that it was induced to enter into a cryotherapy business based on estimates of its possible future earnings, but these estimates of future profits are merely erroneous conjectures as to future events which are not actionable.  Although misrepresentations about the actual earnings of defendants' Dallas location might amount to actionable fraud, plaintiff does not allege that those

figures were in any way false, but only that defendants' projections plaintiff could do as well as the Dallas location did not pan out.

Even taking into account that Section 5 of MFIL may be read more broadly than common law fraud claims, the Michigan Court of Appeals has held that opinions, sales puffery, and predictions of future events are not actionable under MFIL as well. *Shanafan, L.L.C. v. Vanrenterghem*, No. 294923, 2011 WL 1564613, at *1 (Mich. Ct. App. Apr. 26, 2011). In that case, plaintiff relied on statements that food costs would be low and "there is a great potential to make six figures," which the court found were not false statements, and thus were not actionable under Section 5 of MFIL. *Id.* Plaintiff has not directed the court to any cases for the proposition that Section 5 of MFIL allows recovery for expressions of opinion about future earnings and sales puffery made to induce a franchisee to enter into a franchise agreement.

Plaintiff claims that *Rutan v. Straehly*, 289 Mich. 341 (1939), *Crook v. Ford*, 249 Mich. 500 (1930), and *Hensley v. Colonial Dodge, Inc.*, 69 Mich. App. 597, 604 (1976) support its fraud claims, but those cases are inapposite. In *Rutan*, the defendant promised to purchase certain notes in plaintiff's name, but never did so, and the notes were uncollectible. 289 Mich. at 346. The Michigan Supreme Court recognized that fraud claims could not

generally be based on future promises, but found as exception existed because "defendant's promise was the device used to accomplish the fraud which consisted of obtaining his own notes from plaintiff and promising, but failing, to give her any obligation of value in return." *Id.* at 349. This case is unlike *Rutan* and its holding is inapplicable here.

Likewise, *Crook* fails to support plaintiff's fraud claims here. In *Crook*, defendants, experienced builders, represented that they could finish the second story of plaintiff's house and later represented that the house was complete, whereas it had no proper foundations, the wall cracked, the house was out of plumb and had to be jacked up, among other serious deficiencies. 249 Mich. at 501-03. The court recognized that breach of an agreement does not generally constitute fraud, but found that where the builders gave false opinions of matters of fact, namely that the foundation had been completed when it had not, and falsely promised to repair the foundation but did not, and where defendants had exclusive knowledge about the state of the foundation when the plaintiff entered the purchase agreement, an action for fraud could lie. *Id.* at 588. Unlike *Crook*, plaintiff here does not allege that defendants fraudulently misrepresented existing facts which could not be known to a buyer with significantly less bargaining power, but involve

merely unknowable estimates of possible future earnings. Simply put, such statements do not amount to actionable fraud.

The court also finds plaintiff's reliance on *Hensley, supra,* for the proposition that statements of fact susceptible of knowledge are actionable is misplaced. First, plaintiff has not alleged that defendants misrepresented facts susceptible of knowledge, but merely seeks to recover for forward looking projections of possible returns on their investment in the cryotherapy chambers. Second, *Hensley* is inapposite on its face. In that case, the court found that a misrepresentation claim was viable where the plaintiff purchased a used car from a car lot with a prominent sign advertising, "USED CARS 1 YEAR WARRANTY" yet plaintiff signed a purchase agreement that contained fine print on the back stating that no warranties, express or implied, were made by the dealer. 69 Mich. App. at 600. Because no express warranty existed, plaintiff could not sue in contract, and his remedy lied in tort. By contrast, in this case, the Purchase Agreements contain an express warranty; thus, plaintiff may recover in contract.

Next, the court considers whether plaintiff's allegations that defendants had no intention of abiding by the warranty at the time made amounts to fraud. This is simply a breach of warranty claim, and does not give rise to a fraud claim. The economic loss doctrine bars a fraudulent

misrepresentation claim where the alleged fraud is interwoven with the contract.  *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365 (1995).  In *Huron Tool*, the plaintiff alleged that defendant had misrepresented the abilities of its software program which did not operate as promised.  *Id.* at 367-68.  In that case, the court emphasized that in order for a fraud claim to fall outside the economic loss doctrine, the fraud had to be extraneous to the contract itself.  *Id.* at 374.  Here, plaintiff's claim that defendants did not abide by the warranty, is simply a claim that defendants intentionally breached the parties' contract and warranty. Plaintiff has failed to allege a viable fraud claim based on breach of warranty.

### 3. Reasonable Reliance

Plaintiff's MFIL and common law fraud claims also must be dismissed as plaintiff cannot show reasonable reliance on any of the alleged misrepresentations because it agreed that there were no such promises in the written Distribution Agreement and Purchase Agreements.  (Dist. Agmt. ¶¶ 10.1, 10.4; Purch. Agmt. ¶ 3.1).  Reasonable or justifiable reliance is necessary for a MFIL claim.  *Cook v. Little Caesar Enter., Inc.*, 210 F.3d 653, 659 (6th Cir. 2000).  "Reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a

subsequent agreement." *Id.*at 658; *see Partner & Partner, Inc. v. ExxonMobil Oil Corp.*, 326 F. App'x 892, 900 n. 4 (6th Cir. 2009) ("MFIL requires reasonable reliance, and that it is not reasonable to rely on oral promises that were not incorporated into the fully integrated written franchise agreement").

In sum, plaintiff has failed to plead fraud with sufficient particularity under Rule 9(b) because of impermissible group pleading, the claims are premised on non-actionable predictions of future earnings, the claims amount to breach of warranty claims under the economic loss doctrine, and plaintiff has failed to show reasonable reliance on any alleged misrepresentations. Accordingly, the MFIL claims pled in Count I and II, and the common law fraud claims pled in Counts III, IV, and V shall be dismissed**.**

**D.    Tortious Interference with Contractual Relationships**

Counts VI and VII allege tortious interference with contractual relationships.  Plaintiff's claims for tortious interference with contractual relationships must also be dismissed under the economic loss doctrine as they seek recovery in tort for a warranty claim. *See Neibarger v. Universal Coops., Inc.*, 439 Mich. 512, 527-28 (1992) (tort claims are precluded where the alleged economic loss is "caused by a defective product

purchased for commercial purposes.").  Also, plaintiff expressly agreed that

Cryo Import could not be liable for any "special," "incidental,"

"consequential," "lost profits," or "lost business" damages arising from any

defect in a chamber.  (Dist. Agmt. ¶ 2.7; Purch. Agmt. ¶ 10.5).  Limitations

of remedies are valid and enforceable.  Uniform Comm. Code 2-719; *see

also Kvaerner U.S. v. Hakim Plast. Co.*, 74 F. Supp. 2d 709, 722 (1999)

(enforcing disclaimer of consequential damages).  Accordingly, the court

shall dismiss Counts VI and VII.

## E.    Quasi-Contract Claims

Count X pleads promissory estoppel and Count XI pleads unjust

enrichment.  These claims are barred in light of the parties' express

Distribution Agreement and Purchase Agreements which plaintiff has

attached to its First Amended Complaint, has pled is valid and binding, and

relies upon it in its breach of contract and breach of warranty claims.

"Under Michigan law this court may not imply a contract where an express

contract covers the same subject matter." *Aron Alan, LLC v. Tanfran, Inc.*,

240 F. App'x 678, 684 (6th Cir. 2007) (citing *Belle Isle Grill Corp. v. Detroit,*

256 Mich. App. 463 (2003)).

**F.     *Colorado River* Abstention**

Having found that all of plaintiff's tort and quasi-tort claims should be dismissed for the various reasons discussed above, the court turns now to the question of *Colorado River* abstention warrants dismissal of plaintiff's claims of breach of warranty pled in Count VIII, and breach of contract pled in Count IX of the First Amended Complaint, and finds that it does not.  A federal court has a "virtually unflagging obligation" to exercise the jurisdiction bestowed upon it. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18 (1976). This obligation should be avoided in only a few "extraordinary and narrow" circumstances.  *Id.*  Under the *Colorado River* doctrine, the federal court may decline to exercise jurisdiction where a parallel state matter is pending.  *Id.*

The threshold inquiry in deciding whether to abstain in deference to ongoing proceedings in state court is whether the actions are truly parallel. *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998).  To answer that question, the court must find that the two proceedings are "substantially similar."  *Id.*  The parties need not be identical as long as they are substantially similar and the two suits involve the same allegations as to the same material facts.  *Id.* at 340.  Although the cases need not be identical, the resolution of the state court action must provide complete

relief for the federal action. *See Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994); *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990). "Broadly, the relevant inquiry is whether resolution on the state case will resolve the contested issues in the federal action." *Cass River Farms, LLC. v. Hausbeck Pickle Co.*, No. 16-cv-12269, 2016 WL 5930493, at *2 (E.D. Mich. Oct. 12, 2016).

Once the court determines that the two actions are indeed parallel, the court considers the eight combined factors, the first five identified by the Court in *Colorado River,* and the last three added by the Court in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 23-26 (1983). These include:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; ... (4) the order in which jurisdiction was obtained[;]... (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 206–07 (6th Cir. 2001) (quoting *Romine,* 160 F.3d at 340–41). These factors, however, are not to be applied mechanically and no one factor is determinative. "Rather, they require 'a careful balancing of the important factors as they apply in a given

case, with the balance heavily weighed in favor of the exercise of jurisdiction.

As the federal lawsuit now stands, having been reduced to solely contractual claims, the two lawsuits are quite similar; however, the parties in the two lawsuits are different.  Only defendant CryoUSA Import and Sales is a party in the Texas lawsuit while in the federal suit, plaintiff seeks relief not only against CryoUSA Import and Sales, but also has named five other defendants: CryoUSA Mobile, LLC, CryoUSA Holding, LLC, CryoUSA Franchising, LLC, Eric Rauscher, and Mark Murdock.  Thus, even if plaintiff were to prevail in the Texas lawsuit, it would not receive complete relief sought here.  Thus, the two cases are not parallel and the inquiry ends.  However, even if the two cases were parallel, consideration of the eight factors above militates in favor of the court exercising jurisdiction.

The first factor is neutral as neither court has assumed jurisdiction over property.  The second factor favors exercising jurisdiction over the case pending here as the contract called for performance in Michigan, the chambers were used in Michigan, tested and allegedly repaired in Michigan; thus, most of the witnesses are located here.  Third, although it may be undesirable to have virtually the same litigation pending in two courts at once, plaintiff is entitled to bring his contractual claims here in light

of the MFIL which protects franchisees by prohibiting the enforcement of forum selection clauses.  Fourth, because the Texas lawsuit was filed a mere three days before the federal lawsuit, this factor does not weigh in favor of abstention and there has been no suggestion that there has been any progress in that matter which exceeds the progress of the federal suit.

As to the fifth and sixth factors, defendants argue choice-of-law provisions in the Distribution Agreement and Purchase Agreements call for application of Texas law, thus requiring abstention in favor of the Texas lawsuit.  But as a federal court sitting in diversity, the court is perfectly able to apply Texas law.  In any event, the court is not aware of any difference between Texas and Michigan law regarding breach of contract.

This brings us to the last two factors for the court's consideration of whether it should abstain under the *Colorado River* doctrine.  As to whether the state court action may protect the federal plaintiff's rights, the court notes that plaintiff seeks to proceed in its home state for transactions taking place in Michigan.  Thus, this factor weighs against abstention.  Finally, the court considers the presence or absence of concurrent jurisdiction.  This factor is neutral as both Texas and this court have concurrent jurisdiction.

In sum, although the Texas lawsuit and this lawsuit are quite similar now that plaintiff's tort and quasi-contract claims have been dismissed,

abstention is not warranted. The two lawsuits were commenced within three days of each other, thus interests of comity owe no deference to the Texas litigation, and Michigan has a strong interest in allowing the case to proceed here under its prohibition of forum selection clauses in franchise agreements. Under these circumstances, *Colorado River* abstention is not warranted and the court shall deny defendants' motion to dismiss on the basis of abstention.

## IV. Conclusion

For the reasons set forth above, defendants' motion to dismiss (Doc. 2) is GRANTED IN PART and Counts I through VII, and Counts X-XI are DISMISSED WITH PREJUDICE for failure to state a claim, and is DENIED IN PART as to Counts VIII and IX which remain viable and pending in this court.

**IT IS SO ORDERED.**

Dated: September 15, 2017

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 15, 2017, by electronic and/or ordinary mail.

<u>s/Marcia Beauchemin</u>
Deputy Clerk

---